### ELLIS v. CATES.
### Civ. No. 344.

United States District Court
E. D. Virginia, Alexandria Division.
July 16, 1949.

Judgment Affirmed Dec. 20, 1949.
See 178 F.2d 791.

20

John Locke Green, Arlington, Va., Alfred W. Trueax, Arlington, Va., for plaintiff.

Herbert Pittle, U. S. Department of Justice, Washington, D. C., George R. Humrickhouse, United States Attorney, Richmond, Va., for defendant.

GILLIAM, District Judge.

This action seeks possession of lands which comprise a portion of the United States Marine Corps Base at Quantico, Virginia, and the complaint alleges that such lands are in the possession of the defendant. The plaintiff is the Receiver under the order of a Virginia State Court of the Quantico Company, a dissolved Virginia corporation. On the 27th day of May, 1931, the date of institution of the action hereinafter mentioned, one C. E. Ellis and one H. B. Gilliam were joint Receivers of the Company, but at the institution of this action the plaintiff was the successor Receiver. Also, when this suit was instituted the defendant, Clifton B. Cates, was Commanding General in charge of the Marine Corps Base at Quantico, Virginia, but it appears from an affidavit attached to the defendant's motion for summary judgment that the defendant at the date of filing of this motion was not in possession of the lands described in the complaint. There is no denial of this.

The defendant filed an answer denying the plaintiff's claim of title and asserting several affirmative defenses. Each party filed a motion for a summary judgment and a hearing was had at Alexandria, Virginia, on June 6, 1949.

Upon the facts of record in this case and in the records of this Court in the case entitled United States v. H. B. Gilliam and C. E. Ellis, Receivers of the Quantico Company, Alexandria Division, same being Equity Case No. 33, and in the case of United States v. McIntosh, reported in D.C., 57 F.2d 573 and in D.C., 2 F.Supp. 244, I find that there is no genuine issue as to any material fact and decide that the defendant is entitled to a summary judgment. The defendant asserts four grounds for his motion, and these will be discussed separately.

First, the defendant contends that the record shows the lands described in the complaint to be owned in fee simple by the United States. It is disclosed by the pleadings and the records before the Court that the lands in controversy con-

stitute part of the lands involved in previous suits in this Court, and that the predecessors in interest to the parties hereto were parties to such previous suits. The facts upon which title to these lands is claimed by the United States are fully and clearly set out by District Judge Chesnut in his opinion reported in 2 F.Supp. at page 245 (United States v. McIntosh, and three other cases) and this statement by Judge Chesnut is adopted as a correct and adequate outline of the essential facts alleged to establish title which appear in the record of this case and in the record of the two former cases, of which judicial notice is taken. I will not detail them here. Suffice it to mention only these pertinent facts: On November 4, 1918, the President of the United States under Act of Congress, July 1, 1918, 40 Stat. 704, 724, issued a proclamation, 40 Stat. 1874, taking over on behalf of the United States the title to the lands here in dispute, together with other lands; the Act of Congress authorized the President to take over title to about 5,000 acres of land at Quantico, Virginia, as a Naval Base for the Marine Corps, and to determine the just compensation to be paid to the owners, such compensation to be paid immediately, if satisfactory, otherwise 75 percent of the amount fixed at once, with leave to each owner to sue in the Court of Claims or in the appropriate United States District Court for such additional amount as such owner claimed necessary to constitute just compensation; the Congressional Act also provided that the title in fee simple to such lands should vest immediately and absolutely in the United States upon the taking; it was determined under the procedure set up that just compensation for the lands here involved was $269,477.00, and this amount was paid by the United States and accepted by the Quantico Company in full satisfaction.

 My decision is in accord with the conclusion reached by Judge Chesnut as follows [2 F.Supp. 251]: "I think there is no doubt that title to the land was validly acquired by the government from these land owners under the authority of the act and the procedure taken thereunder."

The defendant, secondly, contends that the plaintiff's action is barred by the principle of res judicata. The records in Equity Case No. 33 show that on May 27, 1931, the United States filed an action in this Court to quiet title to the identical lands here involved and other lands, and to enjoin the prosecution of a certain ejectment suit for the possession of the lands here involved which had been instituted in a Virginia State Court by the then Receivers of the Quantico Company, H. B. Gilliam and C. E. Ellis against General Smedley Butler, then the Commanding General in charge of the Quantico Marine Corps Base. On January 17, 1933, a decree was entered in that action adjudging that the "United States of America owns and has a good fee simple title to the several pieces or parcels of land and property in the bill and proceedings mentioned, and as described in the Declaration of Ejectment filed in the Circuit Court of Prince William County, Virginia, by the respondents herein against Smedley D. Butler"; the decree also adjudged that the Receivers were estopped "to question or deny the title of complainant to said lands and property" by reason of the conduct of the Quantico Company in accepting the award of just compensation and in executing release in full satisfaction; and further, "perpetually restrained and enjoined from further prosecution of said action of ejectment brought by the respondents in the Circuit Court of Prince William County, Virginia, against Smedley D. Butler and others, and from bringing, procuring to be brought, or otherwise instigating, any other action or proceeding designed or intended to disturb the United States of America, its officers or agents, in the possession, use and enjoyment of its said several parcels of land and property and from in any manner claiming or asserting title to or right to possession of the said parcels of land and property". This action was brought on December 18, 1947, in disregard of the above decree.

 Plaintiff seeks to overcome the effect of the decree in Equity Case No. 33 by asserting that the decree and the previous proceedings against the former Re-

ceivers are void because the consent of the Court which appointed those Receivers was not obtained before such suits were instituted, and, therefore, the Court was without jurisdiction. My view is that this position must fail without consideration of the Virginia Statute hereafter noticed. In the first place, the action which was partially, at least, the basis for the institution of Equity Case No. 33 to quiet title, was brought by the Receivers in the State Court and thereafter the Receivers defended against the contentions of the Government in Equity Case No. 33 without raising the question of the absence of the Virginia Court's consent to the action. Barnette v. Wells Fargo Nevada Nat. Bank, 270 U.S. 438, 46 S.Ct. 326, 70 L.Ed. 669. However, I believe that Section 6291 of the Virginia Code which was approved May 10, 1887, and became effective January, 1888, constitutes a full and complete answer to the plaintiff's contention. This Virginia Statute reads as follows: "Any receiver of any property appointed by the courts of this Commonwealth may be sued in respect of any act or transaction of his in carrying on the business connected with such property, without the previous leave of the court in which such receiver was appointed". It appears that before the effective date of this statute and under ordinary circumstances in Virginia, a receiver as such could not be sued in another Court without the consent of the appointing Court and that such failure to obtain consent was a jurisdictional matter that could not be waived, but in my opinion such was not the law in Virginia when Equity Case No. 33 was instituted on the 27th day of May, 1931.

The cases cited by the plaintiff's counsel have been examined, but all of these were decided prior to the effective date of Section 6291 of the Virginia Code, and besides, in none of them are found facts comparable in legal significance and weight to the facts in this case, such as the fact that the action in the State Court, the prosecution of which was enjoined in Equity Case No. 33, was instituted by the then Receivers, and the further fact that the Receivers appeared and defended

Equity Case No. 33 without question of this Court's authority to maintain it.

The previous litigation in Equity Case No. 33 and related cases was properly maintained, and the decrees in those actions operate to bar the prosecution of this action under the principle of res judicata.

■ The defendant, thirdly, contends that the record shows this action to be barred by limitations and that the United States has acquired title by adverse possession. The controlling Virginia Statute prevents the maintenance of an action for the recovery of land which did not accrue within 15 years preceding the institution of such action. Section 5805, Virginia Code. The plaintiff seems to concede that this statute would be a bar to the maintenance of the present action but for the fact that the United States entered into possession of the lands in suit under a lease from the Quantico Company, and insists, therefore, that the possession of the United States has not been adverse because, as plaintiff's counsel puts it: "The United States Government * * * (never) said to the Quantico Company, 'You do not have good title to this land: title is in John Doe and we are claiming under John Doe, who holds it adversely to you'. Nowhere in the record is it shown that any disclaimer of the United States Government to the Quantico Company's title was made, or that any notice was ever given to the Quantico Company that the United States Government disclaimed the Quantico Company's title and claimed title to be in another". It would be quite difficult to assume facts showing more clearly the disclaimer of plaintiff's title than do the facts presented on this record. It has been clear to the Quantico Company and its successors in interest that the Government has claimed these lands adversely since November 4, 1918, when the President, pursuant to Congressional authority issued his proclamation taking title to all the lands described therein, including the lands formerly leased from the Quantico Company; in addition, on the 27th day of May, 1931, the United States Government instituted the action hereinbefore mentioned, claiming such title and

therein obtained a favorable decree which, in addition to holding the Government's title good, undertook to restrain the prosecution of any further action to question such title. The records disclose clearly that since November 4, 1918, the United States Government has been continuously in possession of the lands described in the complaint, claiming fee-simple title thereto, and, as almost thirty years had lapsed between that date and the institution of this action, and more than fifteen years between institution of Equity Case No. 33 and the institution of this action, the action is barred by Section 5805 of the Virginia Code. Among the citations noted by the plaintiff is the case of Chapman v. Chapman, 91 Va. 397, 21 S.E. 813, 814, 50 Am. St.Rep. 846, and the following quotation from the opinion in this case is set out: " 'Adverse possession is not the mere holding over against the will of the party from whom you obtain the possession. It is the holding by claim of title, adverse to another's title, that constitutes adverse possession.' * * * Before adverse possession can arise between a vendor and his vendee, or between the grantee of the vendor and such vendee, where the vendor has retained the title, and the statute of limitations commenced to run, the vendee must have dissevered the privity of title between them by the assertion of an adverse right, and openly and continuously disclaim the title of his vendor, and such disclaimer be clearly brought home to the knowledge of the vendor or his grantee." Accepting the above statement to be the Virginia law on this subject, it does not support the plaintiff's contention that this action can be maintained against the plea of the Statute of Limitations. Surely, the Government has openly and continuously disclaimed the title of the plaintiff for nearly thirty years and such disclaimer was clearly brought home to the knowledge of the plaintiff by the proclamation of the President on November 4, 1918, the proceedings thereunder, and also by the institution of Equity Case No. 33 on May 27, 1931.

The other authorities cited by the plaintiff, all of which have been examined, do not sustain his position on this question of the bar of the Statute of Limitations. I hold that the maintenance of the action is barred by Section 5805 of the Virginia Code.

 Fourthly and lastly, the defendant contends that the defendant is not now in possession of the lands and that, therefore, plaintiff is not entitled to a judgment for possession against him. At the time this action was instituted, the defendant was the Commanding General in charge of the Marine Corps Base at Quantico, but the affidavit attached to the defendant's motion for summary judgment sets forth that Clifton B. Cates, the named defendant, is not now Commanding General and is not now in possession of the lands in controversy. This fact is not controverted by the plaintiff and the plaintiff has not seen fit to substitute as parties defendant the present occupants of the lands. For this reason, also, I hold that the defendant is entitled to a summary judgment, as the defendant has demonstrated that title to the lands and the right to possession are in the United States, a third party, and the defendant is not in possession.

The defendant's counsel will submit an order granting the defendant's motion for a summary judgment and denying a similar motion filed by the plaintiff.